

**Colonial**
BONDS & INSURANCE

FILED

2026 JUN -2  A 10: 02

U.S. BANKRUPTCY COURT

June 2nd, 2026

US Bankruptcy Court

900 Market St

400

Philadelphia, PA 19131

Re: Application ID:  133911

TRO/ Injunction Bond

To Whom it May Concern,

Tarani Alike Johnson  has  submitted  an  application  for  a  $706,339.25 TRO/ Injunction bond with Colonial Surety Company, and meets our underwriting requirements.  Colonial Surety Company will issue the bond, upon confirmation of full collateralization and receipt of premium payment.

This letter was written the 2nd of June, 2026.

If you have any questions, please contact us.

Thank you,

Colonial Surety Company

800-221-3662



_Michael Bonfante_

Michael Bonfante, Attorney-In-Fact

Colonial Surety Company
123 Tice Blvd. Suite 250
Woodcliff Lake, NJ 07677-8447

Tel.
(201) 573-8788 | (800) 221-3662

Fax.
(201) 573-1062 | (800) 743-1062

Email.
info@colonialsurety.com

# UCC-1

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
Johnson, Tarani Alike, Successor Trustee, not individually

**B. E-MAIL CONTACT AT SUBMITTER (optional)**

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Sec of Treasury, Managing Trustee of the Trust Fund

45 East City Avenue

Suite 503

Bala Cynwyd, PA 19004

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

MD DEPT. OF ASSESSMENTS & TAXATION
NS
260602-0928000
Date: 6/2/2026
Time: 9:28 AM
Page Count: 2 Pg
Debtor Count: 1
Filing Fees: $25.00
Electronic Records Access: $4.50
Total: $29.50
Order ID# 7961-7510

FILED
2026 JUN -2 A 10: 03
U.S. BANKRUPTCY COURT

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); If any part of the Individual Debtor's name will not fit in line 1b, leave all of Item 1 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| TARANI ALIKE JOHNSON | | | |

| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2285 Bryn Mawr Avenue | Philadelphia | PA | 19131 | US |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); If any part of the Individual Debtor's name will not fit in line 2b, leave all of Item 2 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Authorized Signature, Without recours | Johnson, Tarani-Alike, as Executor for Assognor, a | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 45 East City Avenue I Suite 503 | Bala Cynwynd | IT | 19004 9999 | UM |

**4. COLLATERAL:** This financing statement covers the following collateral:

Operating Circular 10, Appendix One
Assignment:
Without further consideration, Assignor assigns the security interest in Assignor's security entitlement in the government obligations (the "Obligations") held by the United States Government for the Trust to Assignee. Assignor is the owner or the authorized representative of the owner of the securities and entitlements in the Obligations held by United States Government for the Trust. Assignor authorizes discharge of the registrations on the books of the United States Government to the extent necessary to satisfy the Obligations whether now existing or hereafter arising, including without limitation all substitutions, replacements, and reinvestments pertaining to the foregoing.

See additional.

**5.** Check only if applicable and check only one box: Collateral is [X] held in a Trust (see UCC1Ad, Item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  [X] A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
[X] Agricultural Lien  ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  [X] Bailee/Bailor  ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

(Rev. 07/01/23)

# UCC FINANCING STATEMENT ADDENDUM    UCC-1Ad
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

**TARANI ALIKE JOHNSON**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                SUFFIX

MD DEPT. OF ASSESSMENTS & TAXATION
NS
260602-0928000

Date: 6/2/2026
Time: 9:28 AM
Page Count: 2 Pg
Debtor Count: 1
Filing Fees: $25.00
Electronic Records Access: $4.50
Total: $29.50
Order ID# 79617510

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**
The Assignee is hereby authorized and instructed to unconditionally pay to the order of Assignor or bearer, without further advice or notice; payable through Assignee, or through such other agency, bank, financial institution, or securities intermediary as designated by Assignor; from time to time, in the amount United States $ 708, 339.25 assessed by the United States Government in lawful money of account of the United States, for credit to Assignor's Securities Account; including without limitation all substitutions, replacements, and reinvestments pertaining to the foregoing. Re-lease all products, proceeds, fixtures, equities and all orders therefrom to the Debtor immediately and without interruption.
SECURED PARTY:
Tarani Alike Johnson[L.S.]:
By: Johnson; Tarani-Alike, as Executor for Assignor, and not individually.
Authorized Signature, Without recourse.

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14. This FINANCING STATEMENT:**
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in Item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

(Rev. 07/01/23)

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

**PARTIES:**

Party of the First Part: TARANI ALIKE JOHNSON TRUST© :the COPYHOLD TRUST/Estate/Bailor also under any and all derivatives and variations in the spelling thereof: with the exception of "". Under account No. _____ or EIN No.: 10-86-23776  , with all property Lawfully part of the TRUST held as a foreign Trust Estate 28 U.S.C. 1603(b)(3); 8 U.S.C.. 1101(a)(14); 26 U.S.C. 770 I (a)(31).

2020 JUN -2  A 10: 03

U.S. BANKRUPTCY COURT

Party of the Second Part: " Tarani Alike Johnson" (as "Trustee/Secured Party/Bailee") a Live Natural Man a flesh-and-blood Almighty God-created private Christian American sui juris sentient being; and an Ambassador of God Almighty (2nd Corinthians 5:20) Domiciled in Pennsylvania Republic and on religious sojourn through the UNITED STATES; One, who is as a "Non-resident alien" as defined within 26 U.S.C. 7701 (b)(J)(B)], []sic, in regards the UNITED STATES [28 U.S.C. 3002(15)(A); U.C.C. 9-307(h)J with express, explicit, irrevocable reservation of all natural God-given & unalienable Rights; including but not limited by F.S.I.A. without prejudice U.C.C.. 1-207; U.C.C. 1-308, U.C.C. 1-103.6 (Anderson's UCC) reserved ab initio, nunc pro tunc:

Beneficiaries: named in ADDENDUM TO MINUTES OF INITIAL MEETING OF TRUST, in which the trust is to the ultimate benefit for. Interest and use hereinafter held in trust and administered as trustee by: Tarani Alike Johnson; hereinafter: real party authorized representative of the TARANI ALIKE JOHNSON TRUST© TRUST/Estate.

**CAUSE:**

This Security Agreement is made and entered into by and between TRUST and TRUSTEE/Secured Party Creditor respectively.

| | |
|---|---|
| PERFORMANCE SECURITY | RECEIVABLE SECURITY |
| PAYMENT SECURITY | NEGOTIABLE SECURITY |
| NEGOTIABLE DRAFT | SECURED BY COLLATERAL |

If any part or portion of this Security Agreement is found to be invalid or unenforceable, such part or portion shall not void any other part or portion as reasonably severable from said parts or portions, and does not affect the remaindered of the agreements.

**AGREEMENT**

IN CONSIDERATION, TRUST grants all interests to Secured party in exchange for Secured Party, acting to manage, protect and defend all interests of TRUST, to create additional value, and to manage in the personal capacity to transmit business in the private or public capacity as necessary.

The collateral is described herein:

- All Schedules.
- All filings.
- All accounts.
- All fixtures.
- All derivatives.
- All registries.
- All certifications.
- All licenses.
- All bonds.
- All charters
- All treaties.
- All obligations due.
- All duties charged.
- All Articles of Incorporation.
- All Oaths.

- All applications.
- All acceptances.
- All insurances.
- All intellect.
- All beneficial interests- including mutual funds, retirement funds, severance pay, college education funds, pension funds, well fare, charity, food stamps, Social Security.
- All UCC filings, in the nominee of BENEFICIARY as CREDITOR and all property referred as 'collateral' or 'surety'.
- All UCC filings in the nominee TRUST herein, as CREDITOR and all property referred as 'collateral' or 'surety';

To secure all property, interest, income and benefits from TRUST'S entire estate, minus all liabilities. Including all

Security Agreement                     Page 1                     Item# _____

# SECURITY AGREEMENT

## Non-Negotiable <u>Private</u> Agreement

sources derived from direct and indirect, absolute or contingent, due or future, and/or dismissed, abandoned, conveyed, transferred, held, and/or possessed in both the public and in private. This also includes: all agreements parole or expressed, held in trust, Estate, in rem, or receivable, including but not limited to pre-existing and future claims, and all potentials including the rights of subrogation. TRUSTEE/SECURED PARTY maintains the right of:

1. Signing for TRUST in all cases whatsoever wherein any signature of TRUST is required.
2. Issuing a binding commitment to extend credit or for the extension of immediately available credit, whether or not drawn upon and whether or not a chargeback is provided for in the event of difficulties in collection.
3. Providing the security by TRUST for payment of all sums due or owing, past, present and future.
4. Investigation of all sources of assets, exercise of faculties, and labor of SECURED PARTY, that provide the valuable consideration sufficient to support any contract which TRUST may execute or to which TRUST may be regarded as bound by to any person whatsoever and subjects TRUST to:
    a. Voluntary entry of TRUST into the Commercial Registry.
    b. Transfers, conveyances and assignments to Trustee/Secured Party, a security interest in all collateral and interests, including that described herein if necessary and in benefit of the trust.
    c. Agreements to be, act, and function in law and commerce, as the unincorporated, proprietary trademark of TARANI ALIKE JOHNSON TRUST©' for exclusive and discretionary use by Trustee/SECURED PARTY in any manner
    that Trustee/SECURED PARTY elects.

## PUBLIC LAWFUL NOTICE

Filing or registration of this Security Agreement by any Party constitutes open, lawful, public notice that:

The law, venue, and jurisdiction of this Security Agreement is the ratified, finalized, signed, and sealed private contract freely entered into by and between TRUST and Trustee/SECURED PARTY and registered herewith. This Security Agreement is contractually complete herein and herewith and cannot be abrogated, altered, or amended, in whole or part, without the express, written consent of SECURED PARTY.

1. Trustee/SECURED PARTY signing, signs by/for TRUST, when necessary, in every manner where TRUST'S signature is required. TRUSTEE/SECURED PARTY reserves the right to make sufficient claims to secure such indebtedness until satisfied in whole.
2. All property of TRUST is assigned to TRUSTEE/SECURED PARTY for management, safekeeping, and all trust related business.
3. TRUST authorizes all uses of TRUST'S name in any manner TRUSTEE/SECURED PARTY elects.
4. All other uses of TRUST'S name must be done with express consent of TRUSTEE/SECURED PARTY, and is placed under copyright as seen in included common law copyright under number _____.
5. All legal means to protect the security interest being established by this Agreement will be used by TRUSTEE/SECURED PARTY.
6. Whenever necessary and all support needed by TRUSTEE/SECURED PARTY to protect security interest in the collateral herein identified or otherwise added will be provided by TRUSTEE/SECURED PARTY including but not limited by commercial/tort lien process, or any other necessary applicable means to secure trust property.

TRUST warrants that TRUSTEE/SECURED PARTY'S claim against the collateral is enforceable according to all STANDARD TERMS AND CONDITIONS expressed herein. In addition, all applicable laws promulgated for protecting the interests of a TRUSTEE/CREDITOR apply.

TRUSTEE/SECURED PARTY also warrants that it embraces and controls all interests to the collateral, free and clear of all actual and constructive lawful liens, levy and encumbrances. Encumbrances presented, to or belonging to TRUST, against the collateral therein shall remain secondary to this agreement, unless registered prior to the registration this agreement or the interest represented herein, establishing them as non-transferable, as is well-established in international commercial law.

TRUST shall promptly advise TRUSTEE/SECURED PARTY of any Claims and provide TRUSTEE/SECURED PARTY with full details of said Claims, *inter alia*, copy of all documents, correspondence, suits, or actions received by or served upon TRUST. TRUST shall fully cooperate with TRUSTEE/SECURED PARTY in any discussion, negotiation, or other proceeding relating to any Claim AS IT AFFECTS TRUST/TRUSTEE rights.

# SECURITY AGREEMENT

Non-Negotiable Private Agreement

## GENERAL PROVISIONS

## Possession of Collateral

Collateral or evidence of collateral may remain in the possession of TRUST, to be kept at any location elected by TRUSTEE/SECURED PARTY. Notice of changes in location will be made to TRUST within ten (10) days of such relocation. TRUSTEE/SECURED PARTY agrees not to otherwise remove the collateral except as is expected in the ordinary course of business. TRUST agrees to acquire prior written authorization from TRUSTEE/SECURED PARTY for any and all uses of any collateral outside the general scope of practice TRUSTEE/SECURED PARTY may possess all tangible personal property included in collateral, and have beneficial use of all collateral, and may use it in any manner elected and not be considered beneficiary. TRUSTEE/SECURED PARTY'S right to possession and beneficial use does not change ownership of trust property and is unaffected by any collateral that is in the possession of TRUST, even if such possession is required by other law to perfect TRUSTS interest in such collateral. If TRUST, at any time, has possession of any part of the collateral, TRUSTEE/SECURED PARTY shall be deemed to have exercised reasonable care in the custody and preservation of the collateral.

## Proceeds and Products from Collateral

All proceeds and products from the disposition of the collateral, for whatever reason, shall be held in trust by TRUSTEE/SECURED PARTY and shall not be commingled with any other accounts or funds without the express consent of TRUSTEE/SECURED PARTY. Notice of such proceeds must be delivered to TRUSTEE/SECURED PARTY immediately upon receipt. TRUST agrees not to sell, offer to sell, or otherwise transfer or dispose of the collateral, except for inventory sold or accounts collected in the ordinary course of TRUST'S public business. TRUST must not pledge, mortgage, encumber, or otherwise permit the collateral to be subject to any lien, levies, security interests, encumbrances, or charges, other than the security interests established by or through this Security Agreement, without the prior written consent of TRUSTEE/SECURED PARTY.

## Maintenance of Collateral

TRUST agrees to maintain all collateral in good condition and repair, and not to commit or permit damage to or destruction of the collateral or any part of the collateral. TRUSTEE/SECURED PARTY, and/or expressly authorized and designated representatives and agents, shall have the right at all reasonable times to examine, inspect, and audit the collateral wherever located. TRUST shall immediately notify TRUSTEE/SECURED PARTY of all cases involving the return, rejection, repossession, loss, or damage of or to any collateral, generally of all happenings and events affecting the collateral or the value or the amount of the collateral, and specifically, all requests for credit or adjustment of collateral, or dispute arising with respect to the collateral.

## Compliance with Law

TRUST shall comply promptly with all lawfully applicable laws, ordinances, and regulations of all properly authorized government authorities applicable with the production, disposition, or use of the collateral upon proof of claim. Contracts with non-government authorities will result in breach. TRUST may contest in good faith any such law, ordinance, or regulation without compliance during a proceeding, including appropriate appeals, as long as TRUST/TRUSTEES interest in the collateral is protected and in no way jeopardized. TRUSTEE/SECURED PARTY may, upon election, intervene in any situation that appears to place the collateral in jeopardy.

## Public Disputes

TRUST agrees to discharge all applicable taxes, assessments, and liens, when due, against any collateral in his possession; provided that such taxes, assessments, and liens are proved to be superior to the lawful claim established by this Security Agreement, and subsequently perfected by appropriate registration In the event that TRUST elects to dispute such taxes, assessments, and liens, TRUSTEE/SECURED PARTY'S interest must be protected at all times, at the sole opinion of TRUSTEE/SECURED PARTY, who may, at his option, intervene in any situation that appears to jeopardize TRUSTEE/SECURED PARTY'S interest in protecting self-interest or that of the TRUST. TRUST may elect to continue pursuit of dispute of such taxes, assessments, and liens, only upon production of a surety bond by public claimant(s), in favor of TRUST/TRUSTEE sufficient to protect

Security Agreement                              Page 3                         Item#_____

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

TRUST/TRUSTEE from loss, including all costs and fees associated with such dispute. Should public judgment against TRUST or any collateral result from such dispute, TRUST agrees to satisfy such judgment from its accounts established and managed by the UNITED STATES or its subdivisions, agents, officers, or affiliates appointed in due course to do so as not to adversely affect TRUST/TRUSTEES interest in the Collateral.

## SUBORDINATION OF TRUST'S DEBTS TO TRUSTEE/SECURED PARTY

Providing TRUSTEE/SECURED PARTY, subsequent to the execution of this agreement, perfects his security interest in the collateral by appropriate registration, TRUST agrees that its indebtedness to TRUSTEE/SECURED PARTY, whether now existing or hereafter created, shall have priority over unregistered claims that any third parties may raise against TRUST or the collateral, whether or not TRUST is or becomes insolvent. TRUST hereby expressly subordinates any claim that TRUST may have against TRUSTEE/SECURED PARTY, upon any account whatsoever, to the claims that TRUSTEE/SECURED PARTY has or will have against TRUST.

If TRUSTEE/SECURED PARTY so requests, all notes or credit agreements now or hereafter established, evidencing debts or obligation of TRUST to third parties, shall be marked with a legend that the same are subject to this agreement and shall be delivered to TRUSTEE/SECURED PARTY. TRUST agrees, and TRUSTEE/SECURED PARTY hereby is authorized, in the name of TRUST, to execute and file such financing statements and other commercial statements, as TRUSTEE/SECURED PARTY deems necessary or appropriate to perfect, preserve, and enforce his/her rights under this agreement.

## FIDELITY BOND

Know all men by these presents, that TRUST; TARANI ALIKE JOHNSON TRUST©, establishes this bond in favor of TRUSTEE/SECURED PARTY: Tarani Alike Johnson, in the sum of present Collateral Values up to the penal sum of One Hundred Million United States Dollars ($100,000,000.00), for the payment of which bond, well and truly made, TRUST binds TRUST by these presents.

The condition of the above bond is: TRUSTEE/SECURED PARTY covenants to do certain things on behalf of TRUST, as set forth above in Agreement, and TRUST, with regard to conveying goods and services in Commercial Activity to TRUSTEE/SECURED PARTY, covenants to serve as a 'commercial' transmitting utility therefore and, as assurance of fidelity, grants to TRUSTEE/SECURED PARTY a Security Interest in the herein below described Collateral.

This bond shall be in force and effect as of the date hereon and until TRUST; TARANI ALIKE JOHNSON, is released from
liability by the written order of the UNITED STATES GOVERNMENT and provided that said TRUST'S Surety; Tarani Alike Johnson may cancel this bond and be relieved of further liability hereunder by delivering thirty (30) day written notice to TRUST. No such cancellation shall affect any liability incurred or accrued hereunder prior to the termination of said thirty (30) day period. In such event of notice of cancellation, TRUST agrees to reissue the bond before the end of said thirty (30) day period for an amount equal to or greater than the above-stated value of this Security Agreement, unless it is agreed otherwise.

## INDEMNITY CLAUSE

TRUST, without the benefit of discussion or division, does hereby 'agree, covenant, and undertake to indemnify, defend, and hold TRUSTEE/SECURED PARTY harmless from and against all claims, losses, liabilities, costs, interests, and expenses, hereinafter referred to as "Claims" or "Claim". Claims include, without restriction, all legal costs, interests, penalties, fees and fines suffered or incurred by TRUST, in accordance with TRUSTEE/SECURED PARTY'S personal guarantee with respect to any loan or indebtedness of TRUST or collateral, including any amount TRUST might be deemed to owe to any CREDITOR for any reason whatsoever.

## OBLIGATIONS SECURED

The security interest granted herein secures all indebtedness and liability whatsoever of TRUST to TRUSTEE/SECURED PARTY, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, and however evidenced.

## COLLATERAL

The collateral to which this Security Agreement pertains to, inter alia, is herein described below as personal and real property of TRUST. The collateral is now owned or possessed, and includes property hereafter acquired, by TRUST, in which TRUSTEE/SECURED PARTY now holds all security interests. TRUSTEE/SECURED PARTY retains all rights of use, including but not limited to, all principle, interests, proceeds, products, accounts, fixtures, and the Orders there from. All claims of TRUST are security interests released to TRUSTEE/SECURED PARTY for management thereof.

Security Agreement                          Page 4                          Item# _____

# SECURITY AGREEMENT

## Non-Negotiable Private Agreement

Before any of the herein itemized property can be disbursed, exchanged, sold, tendered, forfeited, gifted, transferred, surrendered, conveyed, destroyed, disposed of, or otherwise removed from TRUST'S possession, settlement with TRUSTEE/SECURED PARTY must be satisfied in full and acknowledgment of the same completed to the satisfaction of TRUSTEE/SECURED PARTY.

## COLLATERAL CLARIFICATIONS

- All collateral includes all contracts include all attachments, fixtures, agreements, addendums, derivatives, proceeds, products, goods, and services.
- All collateral includes all assets and equity.
- All collateral includes: institutional, industrial, manufacturing, educational, agricultural, social, and cultural and purposes and uses;
- All collateral includes all structures and fixtures above and below ground including: cottages, cabins, houses, barns, sheds, warehouses, greenhouses, penitentiaries, stores, markets, facilities, stations, fences, corrals, docks, arenas, theaters, halls, clubhouses, offices, chambers, and buildings for any use or purpose;
- All collateral includes all infrastructure including all roads, driveways, sewers, plumbing, electricity, communications, networks, plants, facilities, septic, sanitation, irrigation, drainage, walkways, paths, tunnels, chambers, power and energy sources, and waste management for all uses and purposes;
- All collateral includes all property developed and undeveloped.
- All collateral includes all receipts and proof of purchase, registrations, products, goods, services, and proof of clear title and ownership.
- All collateral includes crops, the host that the crops are harvested from and all harvested and un-harvested crops.
- All collateral includes materials processed, unprocessed, and raw materials and everything in between.
- All collateral includes all inventory harvested, un-harvested, pasteurized, unpasteurized, raw, unprocessed, processed, and produced and everything in between.
- All collateral includes inventory, products, goods and services;
- All collateral includes potential.
- All collateral accounts include all assets and rights, for all purposes and uses, from accounts, fixtures, cases, liens, levies, instruments, documents, contracts, bonds, stock, certificates, agreements, grants, acquisitions, assumptions, conveyors, utilities, transmitters, accounts receivable, write-offs, and set-offs.
- All collateral includes all assets including all gains, proceeds, equity, capital, accounts receivable, derivatives, depreciations, inventory, materials, products, goods, and services.
- All collateral includes agricultural assets including all livestock, chattels, and crops.
- All fixtures includes all attachments;
- All derivatives include all futures.
- All machinery, equipment, vessels, vehicles, crafts, and the like include all fixtures, accoutrements, baggage, and cargo affixed or pertaining thereto or stowed therein, *inter alia:* all motors, engines, ancillary equipment, accessories, parts, tools, instruments, electronic equipment, navigation aids, service equipment, lubricants, and fuels and fuel additives; .
- All collateral includes the transfer of all Rights to buy, sell, trade. grow. raise, gather, hunt, trap, angle, and store food, fiber, and raw materials for shelter, clothing, survival and commercial and/or personal gain;
- All collateral may be used for any purpose or use TRUSTEE/SECURED PARTY elects;
- All collateral includes to all income, principle, interest, benefits and gifts from every source;

TRUSTEE/SECURED PARTY herein claims all collateral and rights of TRUST(s) attached to:

1. All assets, including accounts, principle, interest, capital, proceeds, products, inventory, accounts, cases, papers, documents, contracts, receipts, fixtures, derivatives and proof of Owner's Equity;
2. All rents, leases, sales, salaries, wages, gains, and income;
3. All land, water, mineral, and air rights including rights;
   a. All land includes, residential, commercial, agricultural, forestry, parks and recreation, waterfront and beach, islands. tolls. and mining claims, leased, rented, or owned, developed and undeveloped;
   b. All water includes all alluvial flow, lakes, rivers, oceans, aquifers, levies, banks, shores, streams, creeks, springs, ponds, reservoirs, contributories, beds, bars, deltas, swaps, pools. wells, irrigation, rain, snow, runoff, condensation, catches, basins, ditches, and troughs;

Security Agreement                          Page 5                          Item# _____

# SECURITY AGREEMENT

## Non-Negotiable Private Agreement

    c.   All mineral rights include all minerals, metals, and mining and extraction right;

    d.   All air rights include the air itself and the space it exists in, plus all rights of marketing and extraction; .

4.   All accounts, bank and otherwise, including "safety deposit" boxes and the contents therein, credit card accounts, mutual fund, money markets, investment, portfolios, trust accounts, certificates of deposit, checking, savings, retirement plans, deposits, escrow, mortgage, college fund, stocks, bonds, securities, certificates of deposit, bonds, vacation, time share, certificates of deposit, drafts, futures, notes, options, puts, calls, pension plans, warrants, 401-K's, and the like;

5.   All cash, coins, money, Federal Reserve Notes, and Silver Certificates;

6.   All benefits from all tertiary or subsequent trust account;

7.   All inventory and raw materials;

8.   All machinery;

9.   All equipment;

10.   All vessels, including all boats, yachts, ships, and water craft;

11.   All vehicles including autos, trucks, four-wheel vehicles, trailers, wagons, motorcycles, bicycles, Tri-cycles, wheeled conveyances;

12.   All crafts;

13.   All aircraft, including gliders, balloons;

14.   All motor homes, trailers, mobile homes, recreational vehicles, house, cargo, and travel trailers;

15.   All fixtures, accoutrements, baggage, and cargo;

16.   All agricultural assets including livestock, chattels, food, supplies, seeds, plants, chemicals, crops;

17.   All computers, computer-related equipment and accessories, stored files and data and peripherals for all uses;

18.   All office equipment including communications equipment, computers, printers, scanners, office copiers and office machines;

19.   All electronics and equipment, including hobby, computers, printers, recreational and business applications and uses;

20.   All aural/audio and/or video capturing, production, video recorders, cam recorders, voice recorders and/or reproduction systems and peripherals, films, tapes, sound tracks, compact discs, phonographs, jukeboxes, records, film, cameras, projectors, and televisions for all uses;

21.   All musical instruments;

22.   All manuscripts, booklets, pamphlets, treatises, treatments, monographs, stories, written material, libraries, plays, screenplays, lyrics, songs, music;

23.   All books and manuals;

24.   All aliases, identities, D/B/A and nicknames;

25.   All Trademarks, Registered Marks, copyrights, patents, proprietary data and technology, inventions, royalties, good will;

26.   All credentials, scholastic degrees, diplomas, honors, awards, meritorious citations;

27.   All records, diaries, journals, photographs, negatives, transparencies, images, video footage, film footage, drawings, sound records, audio tapes, video tapes, computer production or storage of all kinds whatsoever;

28.   All live scans and corporal identification factors, including RNA, DNA, gene bank information, blood and blood fractions, biopsies, tissue, body parts, organs, hair, teeth, nails, semen, eggs, urine, fluids or matter, voice-print, retinal image, fingerprints, footprints, palm prints, thumbprints, and said factors' physical counterparts, in any form, and all records, BEAST numbers, record numbers, and information pertaining thereto and the descriptions therefrom;

29.   All biometrics data, records, information, patents, copyrights, and trademark and processes not elsewhere described, the use and proceeds thereof; and the use of the information contained therein or pertaining thereto;

30.   All Rights to obtain, use, request, or refuse or authorize the administration of, any food, beverage,

Security Agreement                 Page 6               Item# _____

# SECURITY AGREEMENT
## Non-Negotiable <u>Private</u> Agreement

nourishment, or water, or any substance to be infused, ingested, injected into, or affecting the body by any means whatsoever;

31. All Rights to request, refuse, or authorize the administration of; any drug, manipulation, material, process, procedure, ray, or wave which alters, or might alter the present or future state of the body, mind, spirit, or will by any means, method, or process whatsoever;

32. All keys, locks, lock combinations, encryption codes or keys, safes, secured places, and security devices, security programs, and any software, machinery, or devices related thereto;

33. All Rights to access and use utilities upon payment of the same unit costs as the comparable units of usage offered to most-favored customers, *inter alia,* cable, electricity, garbage, gas, internet, satellite, sewage, telephone, water, www, and all other methods of communication, energy transmission, and food water and/or sustenance distribution;

34. All Rights to barter, buy, contract, sell, or trade ideas, products, services, or work;

35. All suppliers, manufactures, shippers, consultants, resources, employees, professionals, contractors, subcontractors, mailing lists, data bases, and customers;

36. All Names, Nominees, DBAs and Corporate Soles used and/or executed, registered, claimed, assumed, presumed, and/or filed, and the right to be executed and filed, under said names;

37. All intellectual property, goods, and services;

38. All signatures, signs and seals;

39. All insurance policies including life, health care, unemployment, workman's compensation, malpractice, risk, disability, homeowner's, automobile, business, license, renter's, hazard, and those against losses, damages, injuries and the like professional and private.

40. All present and future retirement incomes;

41. All nest eggs and hidden money in antiques, old vehicles and the like;

42. All survivorship rights and benefits;

43. All inheritances prior, present and future;

44. All prepaid burial plots, funeral expenses and services;

45. All applications, filings, correspondence, information, identifying marks, image licenses or travel documents, materials, permits, registrations, and records and records numbers held by any entity, for any purpose, however acquired, as well as the analyses and uses thereof, and any use of any information and images contained therein, regardless of creator, method, location, process, or storage form, *inter alia,* all processed algorithms analyzing, classifying, comparing, compressing, displaying, identifying, processing, storing, or transmitting said applications, filings, correspondence, information, identifying marks, image licenses or travel documents, materials, permits, registrations, and records and records numbers, and the like;

46. All library cards and rights;

47. All credit, charge, and debit cards, mortgages, notes, applications, card numbers, and associated records and information;

48. All court cases and judgments, past, present, and future, in any court whatsoever, and all bonds, orders, warrants, and other matters attached thereto or derived there from;

49. All jewelry, heirlooms, precious metals, bullion, coins, precious jewels, semi-precious stones, mounts, and any storage boxes within which said items are stored;

50. All tax correspondence, filings, notices, coding, record numbers, and any information contained therein, wherever and however located, and no matter by whom said information was obtained, compiled, codified, recorded, stored, analyzed, processed, communicated, or utilized;

51. All lotteries, overpayments, prepayments, prizes, rebates, refunds, returns, Treasury Direct Accounts, claimed and unclaimed funds, and all records and records numbers, correspondence, and information pertaining thereto or derived there from;

52. All agricultural crops, includes herbs, cultivated plants, growing plants, inventory, ancillary equipment, supplies, propagation plants, and seeds, and all related storage facilities, greenhouses, products of and for and all equipment, inventories, tools, supplies, contracts, accoutrements involved in the planting,

# SECURITY AGREEMENT

### Non-Negotiable <u>Private</u> Agreement

tilling, harvesting, processing, preservation, and storage of all products of agriculture;

53. All farm, lawn, and irrigation equipment, accessories, attachments, hand-tools, implements, service equipment, parts, and supplies, and storage sheds and contents;

54. All fuel, fuel tanks, containers, and involved or related delivery systems;

55. All leisure and professional hobby, metal-working, woodworking, and other such machinery, and all ancillary equipment, accessories, consumables, power tools, hand tools, inventories, storage cabinets, toolboxes, work benches, shops, and facilities;

56. All leisure and sporting, fishing, hunting, and camping equipment, and all special clothing, materials, supplies, boats, Jet Ski's, trailers, snowmobiles, ATV's equipment, RV's, camping equipment of any kind and baggage related thereto;

57. All rifles, guns and related accessories, ammunition and the integral components thereof;

58. All radios, televisions, communication equipment, receivers, transceivers, transmitters, antennas, and towers, and all ancillary equipment, supplies, computers, software programs, wiring, and related accoutrements and devices:

59. All power-generating and/or transforming machines or devices, and all storage, conditioning, control, distribution, wiring, and ancillary equipment pertaining or attached thereto;

60. All hot tubs, Jacuzzis, and pools;

61. All personal and professional construction tools, equipment and supplies including water wells and well-drilling equipment, and all ancillary equipment, chemicals, tools, and supplies;

62. All shipping, storing, and cargo containers, and all chassis, truck trailers, vans, and the contents thereof; whether on-site, in transit, or in storage anywhere;

63. All building and development plans, permits, licenses, bonds, and insurances.

64. All communications and data, and the methods, devices, and forms of information storage and retrieval, and the products of any such stored information;

65. All books, drawings, magazines, manuals, and reference materials regardless of physical form;

66. All artwork, paintings, etchings, photographic art, lithographs, and serigraphs. and all frames and Mounts pertaining or affixed thereto;

67. All food, and all devices, tools, equipment, vehicles, machines, and related accoutrements involved in food preservation, preparation, growth, transport, and storage;

68. All wedding bands and rings, watches, wardrobe, and toiletries:

69. All household goods and appliances, linens, furniture, kitchen utensils, cutlery, tableware, cooking utensils, pottery, antiques;

70. All businesses, corporations, companies, trusts, partnerships, limited partnerships, organizations, proprietorships, and the like, now owned or hereafter acquired, and all books and records thereof and there from, all income there from, and all accessories,' accounts, trash, equipment, information, inventory, money, spare parts, and computer software pertaining thereto;

71. All packages, parcels, envelopes, or labels of any kind whatsoever which are addressed to, or intended to be addressed to, TRUST, whether received or not received by TRUST;

72. All telephone numbers, and contacts;

73. Any property not specifically listed, named, or specified by make, model, serial number, etc., is expressly herewith included as collateral of TRUST. This as it applies to any and all 'property' as described in detail and registered and filed under necessity in the exercise of the right of Redemption by TRUSTEE/SECURED PARTY and/or CREDITOR.

74. Proceeds from BENEFICIARY'S property, labor and intellectual contributions from every source;

75. TRUST'S CERTIFICATION OF BIRTH and including Application for Birth Certificate and File Number, and all other Certificates of Birth, Certificates of Living Birth, Notifications of Registration of Birth, or Certificates of Registration of Birth, or otherwise entitled documents of birth whether county, state, federal, or other either ascribed to or derived from the name of TRUST identified above, or based upon the above described birth document.

76. All Immigration and legalization papers

77. All Social Security BENEFITS

78. All Driver Licenses # driver license number

79. All UCC Filings and Number UCC File # plus all addendums

Security Agreement                    Page 8                    Item# _____

# SECURITY AGREEMENT

## Non-Negotiable Private Agreement

80. All property listed on Legal Notices and Demands that are filed in TRUST'S county, state, and nation.

81. All registration in county, state, national and international registries

NOTE: TRUSTEE/SECURED PARTY reserves the right to add or amend this private Security Agreement as needed or as necessary by TRUSTEE/SECURED PARTY or expressly authorized representative.

82. building materials and prefabricated buildings, and all components or materials pertaining thereto, before or during manufacture, transportation, storage, building, erection, or vacancy while awaiting occupancy thereof;

83. All construction machinery, equipment, supplies, resources, tools, vehicles and all ancillary equipment, supplies, materials, fuels, fuel additives, supplies, materials, and service equipment pertaining thereto;

## ADVISORY

All instruments and documents referenced/itemized above are accepted for value, with all related endorsements, front and back, in accordance with UCC § 3-419 and per intent of House Joint Resolution 192 of June 5, 1933. This Security Agreement is accepted for value, property of TRUSTEE/SECURED PARTY, and not dischargeable in bankruptcy court as TRUST is exempt from third-party levy. This Security Agreement supersedes all previous contracts or Security Agreements between TRUST and TRUSTEE/SECURED PARTY except for Contracts included.

TRUST agrees to notify all of TRUST'S former CREDITORS, future CREDITORS, and any possible purchasers of the herein-described Collateral status, of this Security Agreement.

This Security Agreement devolves on BENEFICIARIES and ASSIGNS, who take title to this Security Agreement, as TRUSTEE/SECURED PARTY to hold and enforce interests by CONSENSUAL AGREEMENT and Private Contract in deed and stead of BENEFICIARY.

TRUSTEE/SECURED PARTY maintains the right to sign for TRUST when and wherever the signature of TRUST will be required and necessary. TRUSTEE/SECURED PARTY signs for TRUST as 'agent' and/or 'AUTHORIZED REPRESENTATIVE' of TRUST. TRUSTEE/SECURED PARTY reserves the right to make sufficient claims to secure such indebtedness until satisfied in whole.

TRUSTEE/SECURED PARTY maintains all options and rights of transfer, and may issue an assignment of the complete Security Agreement or any division of parts therefrom. In the event of dishonor by TRUST, or difficulties in collection, TRUSTEE/SECURED PARTY has full authority and agreement to take all actions deemed necessary for acquisition of remedy and receivables by any means.

## BREACH OF CONTRACT

1.    Any of the following events will establish a breach:
   a. Failure by TRUST to pay TRUSTEE/SECURED PARTY any secured debts when due.
   b. Failure by TRUST to perform any secured obligations when required to be performed.
   c. Any breach of any warranty or guarantees by TRUST contained in this Security Agreement.
   d. Any breach, loss, damage, expense, fee, custom, duty, or injury to TRUSTEE/SECURED PARTY by virtue of the Private Contract, or included on PRICE LIST.
   e. Failure to report any income or precedes accruing from any principles, interests, or transactions.
   f. Evidence that a statement, warranty, guarantee or representation made or implied, at any time, in this or other Agreements by TRUST, is false, misleading, or incomplete in any material respect made or furnished.

Dissolution or termination of TRUST'S existence as a legal entity or the insolvency of TRUST, upon the appointment of a receiver, for all or any portion of TRUST'S property, an assignment for the benefit of inferior CREDITORS, or the commencement of proceedings under bankruptcy or insolvency laws by or against TRUST.

Commencement of foreclosure by any other CREDITOR against TRUST or the collateral, garnishments or other attachments from obligations or debts due to TRUST from all accounts receivable, and/or other funds due and payable to TRUST at any time;

Any violation of this agreement will constitute a penalty in accordance with and outlined in the "Legal Notice and Demand".

TRUSTEE/SECURED PARTY now holds all interests in any and all property belonging to, in possession, use or control of TRUST.

Security Agreement          Page 9          Item# _____

# SECURITY AGREEMENT

Non-Negotiable <u>Private</u> Agreement

## CURE OF BREACH

If a breach under this agreement is curable through an account held by TRUST but managed by the UNITED STATES or one of its subdivisions, agents, officers, or affiliates, such breach may be cured by TRUST with express consent and voluntary agreement by TRUSTEE/SECURED PARTY; and upon advice by the Fiduciary that the breach has been cured and no event of breach will be acted upon. A breach under this agreement, initiated by third party intervention, will not be considered a breach if such intervention is challenged by TRUST, in a good faith effort to confirm or disprove the validity or reasonableness of the public claim which is the basis of the public CREDITOR'S proceeding; but TRUST must, in that event, deposit such surety with TRUSTEE/SECURED PARTY as is necessary to indemnify TRUSTEE/SECURED PARTY from loss.

## ACCELERATION

In the event of breach, TRUSTEE/SECURED PARTY may declare any/entire indebtedness immediately due and payable without notice.

## LIQUIDATION OF COLLATERAL

In the event of breach, TRUSTEE/SECURED PARTY shall have full power to privately or publicly sell, lease, transfer, trade, rent, exchange, or otherwise deal with the collateral, products or proceeds, in his own name, in the name of TRUST or other nominee. All expenses related to the liquidation of collateral shall become a part of TRUST'S indebtedness. TRUSTEE/SECURED PARTY may, at his discretion, transfer part or all of the collateral to his/her own name or to the name of nominee for the protection of trust property and the heirs and assigns as beneficiaries.

## RIGHTS AND REMEDIES

TRUSTEE/SECURED. PARTY holds all rights and remedies of a Secured CREDITOR under the provisions of the Uniform Commercial Code (UCC), as the UCC has been adopted in the state where part or all of the collateral is located or presumed to be located, or Internationally as elected by TRUSTEE/SECURED PARTY. TRUSTEE/SECURED PARTY holds the right to proceed in Universal jurisdictions and venues, by self-help, or with or without a public court, tribunal, collection or enforcement agencies. Rights and remedies available to TRUSTEE/SECURED PARTY may be exercised singularly or jointly and in all venues and jurisdictions concurrently at the sole discretion and election of TRUSTEE/SECURED PARTY. The TRUST will bear all costs and liability to all actions.

## MISCELLANEOUS PROVISIONS

# Amendments

This agreement and the related documents established mutual assent and a meeting of the minds. No alteration of, set-off or amendment to this agreement shall be effective unless expressed in writing under voluntary, noticed, informed consent of the TRUSTEE/SECURED PARTY.

# Applicable Law.

The Contract and Security Agreement is the law, and the law is the Contract and Security Agreement. The guidelines for the laws of the Contract and this Security Agreement, is the mutual assent and agreement of the Parties, expressed by the Contract and Security Agreement. It was modeled after, created from, and is supported by Private International Law, in accord with the Laws of Nations, International and Domestic Laws, supported by the Administrative Procedures Act, the Civil Procedure

Act, and the Uniform Commercial Code as adopted by International and state legislation of all U.S. States, and unwritten by Common Law, Contract Law, Cannon Law, Constitutional Law, Merchant Law, Property and Estate Law, Statutory Law, Civil Law, Tort Law, Commercial Law, Trade Law, Judiciary Laws Securities Law and Legislative Law, Executive Law, and most other forms of law in almost all jurisdictions and venues. It conforms to almost all other ABC organizations and agencies including GMT, UNCITRAL, UNIDROIT, and CIGS. Case Law, aka, stare decisis, supports this Contract and Security Agreement, but is not ever cited for good cause. Common Law is only superseded by Equity Law when the Common Law does not provide for remedy.

# SECURITY AGREEMENT

## Non-Negotiable <u>Private</u> Agreement

It is impossible, and always will be, to address all the "Policies", "Signing Statements", and/or other unknown, undisclosed trickery, lies, deceptions and forms of fraud, embezzlement, organized crime, and RICO actions, used to override law and justice in today's world

# Expenses

TRUST agrees to pay for all losses, costs, fees, time, taxes, expenses, and professional fees, incurred by TRUSTEE/SECURED PARTY to collect or enforce the provisions of this agreement

## STANDARD TERMS AND CONDITIONS

All of the STANDARD TERMS AND CONDITTONS as set forth in "ATTACHMENTS 'A' - DEFINITIONS"

Document Item Number: _____apply hereto, plus all incidentals, some duplicated or left in the Security Agreement, for the purpose of convenience and/or comprehension. They shall not be considered in bad faith, unclean hands, misleading or nondisclosure as there is no intent of such by the TRUST or TRUSTEE/SECURED PARTY. Errors and Omissions are consistent with intent.

## Indebtedness

Debt is that which is owed; usually referencing assets owed. The word "indebtedness" means the debt evidenced by this Security Agreement, or a claim against TRUST, and all TRUST'S present and future possessions identified in this agreement as collateral; and all public obligations and debts ascribed to TRUST through contracts and agreements, whether expressed or implied, known or unknown, or actual or constructive. All claims made by TRUSTEE/SECURED PARTY against TRUST, whether existing now or in the future, whether they are voluntary or involuntary, due or not due, direct or indirect, absolute or contingent, liquidated or not, regardless of whether TRUST is or may be individually or jointly, obligated as, or beneficiary of, a surety or accommodation party are the collateral for the debt owed.

## Related Documents

The phrase "related documents" means all promissory notes, credit agreements, loan agreements, guaranties, Security Agreements, mortgages, deeds of trust, applications, accounts, licenses, policies, permits, identification cards, account cards, receipts, forms, and all other documents and instruments that TRUST or its previous surety has or will execute in connection with TRUST'S total indebtedness.

The term *inter alia* may be used to include "related documents". It literally means 'among other things'.

## Notices

All notices required to be given by either party under this agreement, shall be in writing or Proof of Fax and shall be effective when actually delivered, when deposited with the United States Post Office or a nationally recognized delivery service that both parties agree to. Notice must to be given to SECURED PARTY at the address shown on this Agreement or to such other address as designated to the other in writing.

## Severability

If one or more provisions of this agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a qualified court finds that one or more provisions of this agreement is invalid or unenforceable, but that by limiting such provision(s) it would become valid or enforceable, such provision(s) shall be deemed to be written, construed, and enforced as so limited. In the event that such a finding and limitation causes damage or hardship to either party, the agreement shall be amended in a lawful manner to make all parties whole.

## Waiver of Contractual Right

The failure of either party to enforce one or more provisions of this agreement shall not be construed as a waiver or limitation of that PARTY'S right to subsequently enforce and compel strict compliance with every provision of this agreement. TRUSTEE/SECURED PARTY shall not be deemed to have waived any rights under this agreement unless such waiver is given in writing and signed by TRUSTEE/SECURED PARTY under voluntary, noticed, informed consent. No delay, error or omission on the part of TRUSTEE/SECURED PARTY in exercising a right or option shall operate as a waiver of such right or any other right. A waiver by TRUSTEE/SECURED PARTY of a provision of this agreement shall not prejudice or constitute a waiver of TRUSTEE/SECURED PARTY'S right otherwise to demand strict compliance with that provision or any other provision of this agreement. No prior waiver by TRUSTEE/SECURED PARTY, nor any course of dealing between TRUSTEE/SECURED PARTY and TRUST, shall constitute a waiver of TRUSTEE/SECURED PARTY'S rights or of TRUST'S obligations under this agreement as to

# SECURITY AGREEMENT

## Non-Negotiable Private Agreement

To avert losses of vested rights in the present or future collateral that is the subject of the attached Security Agreement. TRUST agrees to make available to TRUSTEE/SECURED PARTY, such accounts established by intent of the parties, by operation of law, and/or as constructive trusts, to hold proceeds arising from assets belonging to TRUST, and administered by the UNITED STATES or its subdivisions, agents, or affiliates. Pursuant to existing laws of the UNITED STATES and the agreement of the parties of this Security Agreement, TRUSTEE/SECURED PARTY is authorized to assign such funds from said accounts as are necessary to settle all past, present, and future public debts and obligations incurred by TRUST on behalf of TRUSTEE/SECURED PARTY.

TRUST hereby confirms that this Security     TARANI ALIKE JOHNSON TRUST©
Agreement is a duly executed, signed, and sealed
private contract entered into knowingly,     TRUST SIGNATURE
intentionally, and voluntarily by TRUST and
TRUSTEE/SECURED PARTY, wherein and
whereby TRUST:

## NOTICE OF LIEN

•    This agreement constitutes an International Commercial Lien on all property (in each of their individual capacity/form/item) of TRUST (indemnitor) on behalf of, and for the benefit of, TRUSTEE/SECURED PARTY CREDITOR (indemnitee) in the amount of $100,000,000.00 (ONE HUNDRED MILLION) in silver dollars, fiat money, or money of account/credit, at par value. This lien will expire at the moment that the indemnitee expires or when this lien is satisfied by any Third Party Interloper who seeks to take/seize any of said property, or upon fulfillment of trusts purpose in distribution to beneficiaries and trust dissolution in proper due course.

Security Agreement                    Page 13                    Item# _____

# SECURITY AGREEMENT

### Non-Negotiable Private Agreement

future transactions. Whenever the consent of TRUESTEE/SECURED PARTY is required under this agreement, the granting of such consent by TRUSTEE/SECURED PARTY in one instance shall not constitute consent over the whole or any portion therefrom.

## AMBIGUITIES AND INTERPRETATION

Each party acknowledges receipt of this agreement and has had the opportunity to have counsel an/o anyone they chose review it. Any rule of construction claiming ambiguities is to be resolved against the drafting party and shall not in the interpretation of this agreement or its amendments. All statements in this instrument are important to the parties. Misunderstandings have been resolved prior to execution.

## AUTHORITY OT REPRESENT

A signer of this agreement on behalf of a legal entity certifies that he/she has the authority to sign this agreement and that this transaction has been duly authorized by such entity.

## GENDER

All references within this agreement to a specific gender include the other

Note: TRUSTEE/SECURED PARTY reserves the right to satisfy any judgment, lien, levy, debt, or obligation, whether secured, unsecured, or purported to be secured, against TRUST by acceptance for value and return for adjustment, settlement and closure, executing a Bill of Exchange, or against the Fidelity Bond registered herewith under necessity, as the TRUSTEE/SECURED PARTY may select.

### SIGNATURES
Applicable to all Successors and Assigns

TRUSTEE/SECURED PARTY executes this Security Agreement certified and sworn on TRUST'S unlimited liability true, correct, and complete, and accepts all signatures in accord with UCC §3-419
INSTURMENTS SIGNED

*TARANI ALIKE JOHNSON TRUST©*
TRUST SIGNATURE
Party of the first Part
U.C.C. §1-201 (39)
Common Law Copyright 2017

Trustee/Secured Party's Signature
Party of the Second Part
Authorized Representative,
U.C.C. 1-201(35)
All Rights Reserved

### JURAT

STATE OF Pennsylvania )
                          ) Scilicet
County of Philadelphia )

SUBSCRIBED TO before me this _____16_____ day of __February__, A.D. 2018
a Notary, that Tarani Alike Johnson
personally appeared and known to me to be the man whose name subscribed to the within instrument and acknowledged to be the same.

Notary Public in and for said State
My commission expires: Dec 29 2019

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MONIFA MCCOY
Notary Public
OF PHILADELPHIA, PHILADELPH
My Commission Expires

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MONIFA MCCOY
Notary Public
CITY OF PHILADELPHIA, PHILADELPHIA CNTY
My Commission Expires Dec 29, 2019

Security Agreement                    Page 12                    Item#_____