**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 13** |
| **Tarani A. Johnson,** | : | |
| | : | **Bky No. 26-10372 (DJB)** |
| **Debtor.** | : | |
| | : | |
| | : | |

# OPINION

Chapter 13 bankruptcy cases represent a Congressional sanctioned bargain: an individual with regular income and modest debts can secure a breathing spell to reorganize her affairs and satisfy her debts so long as she promptly and forthrightly commits her disposable income to repay those debts. The bargain breaks down when a debtor proves herself to be repeatedly ineligible or refuses to honor the deal of committing her disposable income to the resolution of her debts. That failure taxes the bankruptcy system: creditors are forestalled from exercising their state-law remedies without compensation; the standing chapter 13 trustee must dedicate limited resources to police a case which cannot successfully complete and the Court expends judicial resources to consider matters and hold hearings which ultimately do not advance a resolution of debtor/creditor relations.

What is the Court to do when a debtor repeatedly presents chapter 13 cases but repeatedly does not participate in the chapter 13 bargain? Congress made clear that dismissal of a bankruptcy case does not *per se* preclude future cases. 11 U.S.C. § 349(a). However, Congress also recognized there may be instances where a court can (or should) preclude a future bankruptcy case. Id. Should the Court consider a bar to filing future bankruptcy cases? The

courthouse doors are, and should be, open to those committed debtors who need and properly seek relief.

Binding precedent in this circuit makes clear that a bar to future filings is an extreme remedy; one the Court must use sparingly. In re Ross, 858 F.3d 779, 787 (3d Cir. 2017). After consideration of the record of the cases commenced by this particular debtor before this Court, the Court concludes that this debtor presents a repeated failure to adhere to the chapter 13 bargain which justifies the Court's exercise of discretion to control its docket and maintain the integrity of the bankruptcy system.

**Basic Case Information**

On January 30, 2026, Tarani Alike Johnson (the "Debtor") commenced a *pro se* voluntary petition for relief under Chapter 13, Title 11 of the United States Code (the "Bankruptcy Code"). [Dkt. No. 1] This was the Debtor's seventh (7th) case in this District. After a series of contested matters brought by the Debtor and other parties in interest, including no less than 12 requested emergency hearings [see Dkt. Nos. 7, 31, 48, 65, 70, 122, 124, 173, 174, 175, 176, and 214] and several multi-hour trial dispositions spanning six (6) months, the Debtor elected to dismiss her case. [Dkt. No. 221]

Although the Debtor sought voluntary dismissal as of right pursuant to § 1307(b) of the Bankruptcy Code, the Standing Chapter 13 Trustee (the "Chapter 13 Trustee") (joined by several others) asks that the Debtor be subject to a lifetime bar in any jurisdiction as a result of her successive unsuccessful chapter 13 cases.

**Procedural History**

On July 23, 2026, the Chapter 13 Trustee filed his Motion To Dismiss With Prejudice And For Imposition Of Extended Bar Order Pursuant To 11 U.S.C. §§ 105(a), 109(e), 349(a),

and 1307(c) [Dkt. No. 217] (the "Trustee Dismissal Motion"). The Trustee Dismissal Motion was over 438 pages (including exhibits) and alleged a pattern of serial bankruptcy filings and systematic abuses of the bankruptcy system and sought a national filing injunction against the Debtor prohibiting her from filing any bankruptcy case in any court without prior authorization from this Court.

That same day, the Debtor sought dismissal of her bankruptcy case without prejudice pursuant to § 1307(b) of the Bankruptcy Code as of right. [Dkt. No. 221] On July 27, 2026, the Chapter 13 Trustee opposed the Debtor's dismissal – without prejudice – essentially for the reasons outlined in the Trustee Dismissal Motion. [Dkt. No. 223]

By Order entered July 28, 2026 (the "Dismissal Order") [Dkt. No. 224], the Court granted the Debtor's request for a voluntary dismissal; however, the Court scheduled a hearing to determine whether cause existed to attach conditions or impose a filing bar to the dismissal. [Id. ¶ 3 and n.3] Notice of the Dismissal Order was served by the Bankruptcy Noticing Center to, among others, the Debtor on July 30, 2026. [Dkt. No. 226]

The following parties submitted memoranda in support of the imposition of conditions or a bar as requested in the Trustee Dismissal Motion: Robertson, Anschutz, Schneid, Crane & Partners, PLLC as counsel for Wells Fargo [Dkt No. 225]; the City of Philadelphia [Dkt. No. 227]; U.S. Bank Trust National Association, not in its individual capacity but solely as Owner Trustee for VRMTG Asset Trust c/o NewRez LLC d/b/a Shellpoint Mortgage Servicing ("U.S. Bank") [Dkt. No. 228]; and Wells Fargo Bank, N.A. ("Wells"). [Dkt. No. 232] The Debtor, for herself, filed a memorandum in opposition to the imposition of any conditions or future filing bars. [Dkt. No. 230]

Both the Chapter 13 Trustee and the Debtor submitted lists of the exhibits to be presented at said hearing. [Dkt. Nos. 229 & 231] The Court held an evidentiary hearing on August 18, 2026. The Debtor failed to appear. At the hearing, the Court received evidence in the form of the exhibits offered by the Chapter 13 Trustee (Exhibits A – XXX) and the witness testimony of Kenneth West. The Court offered the Debtor the opportunity to present evidence but, as a result of her failure to appear, none was offered.[1] The Court then heard argument from the Chapter 13 Trustee and those in support of the request to impose a bar to future bankruptcy filings by the Debtor. The Court considered the Debtor's submission in opposition. [Dkt. No. 230] The matter is now ripe for a disposition.[2]

## Legal Standard

### General Dismissal Framework

The dismissal of a bankruptcy case is a proper conclusion of a case contemplated by Congress. See, e.g., 11 U.S.C. § 362(c)(2)(B) (terminating the automatic stay upon dismissal of a bankruptcy case), § 707(a) (authorizing dismissal for cause); § 1112(b) (authorizing dismissal

---

1 The Debtor appeared to file a series of documents on the day of the hearing. [Dkt. Nos. 233-242] None of these documents were identified as related to or to be considered with the Trustee Dismissal Motion or the Dismissal Order [c.f. Dkt. Nos. 230 & 231] (noting the relation of the Debtor's filings to pending matters). None of these documents were offered into evidence at the hearing. The Court has not considered these items in the disposition herein.

2 The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052 as incorporated by Federal Rule of Bankruptcy Procedure 9014. The Court has jurisdiction pursuant to 28 U.S.C. § 1334, the Standing Order of Reference of the Eastern District of Pennsylvania, and the Court's retention of jurisdiction in the Dismissal Order as the matter arises in and/or is related to a case under the Bankruptcy Code. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The matter presented by the Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A). To the extent that the matter is deemed non-core and/or the Court is without constitutional authority to render a final decision on the Motion, the following shall constitute the Court's report and recommendation in accordance with 28 U.S.C. § 157(c).

for cause), § 1307(b) (authorizing dismissal by the debtor as of right); and § 1307(c) (authorizing dismissal for cause). Section 349(b) of the Bankruptcy Code dictates the effect of dismissal, and in particular, the effect a dismissal has on a debtor's right to seek relief again. Section 349(a) of the Bankruptcy Code provides

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; *nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title*, except as provided in section 109(g) of this title.

(emphasis added)

So the "general rule" is that a dismissal of a bankruptcy case does not bar a debtor from refiling a subsequent bankruptcy case. But Congress also recognized there may be instances where a Court can (or should) preclude a future bankruptcy case by the inclusion of the language "unless the court, for cause, orders otherwise[.]" Id.

The Trustee Dismissal Motion[3] seeks an "order otherwise" in the form of a bar to preclude the Debtor from filing another bankruptcy case in any jurisdiction individually, jointly[4], or "as any other entity" without further leave of this Court. The relief raises two essential questions: (i) does the Court have authority to enter a bar which would preclude the Debtor from

---

[3] The Trustee Dismissal Motion purports to seek dismissal "with prejudice" as well as a bar to future bankruptcy filings by the Debtor. [See Dkt. Nos. 217 and 223] At the hearing, the Chapter 13 Trustee clarified that he equated "with prejudice" with the imposition of a filing bar. Therefore, the Court will confine its consideration to the imposition of a filing bar and not to whether the Debtor exhibited conduct in this case which would justify barring the Debtor from receiving a discharge in future cases. C.f. generally 3 Collier on Bankruptcy ¶ 349.02[2] (16th ed. 2026).

[4] At the hearing, the Chapter 13 Trustee confirmed that he was not seeking a bar which would apply to parties other than the Debtor; it was simply to preclude the Debtor from being a joint debtor with some other party. Therefore, due process concerns of "other" parties are not implicated here.

making future filings in this Court without further leave of court; and (ii) does this Court have authority to enter a bar which would affect this Debtor throughout the country (i.e., not limited to the Eastern District of Pennsylvania). The Court concludes the answer to both questions is yes.

**Does This Court Have Authority To Enter A Dismissal With A Bar?**

Bankruptcy courts are empowered to issue a filing injunction against a debtor (i.e., a bar order) even when they request a voluntary dismissal of their case. See In re Ross, 858 F.3d 779, 783 (3d Cir. 2017). As noted, § 349 of the Bankruptcy Code authorizes a bankruptcy court to alter the "general rule" and preclude future cases. The Ross court noted that § 105(a) of the Bankruptcy Code provides bankruptcy courts with the statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code," including the "inherent power to sanction abusive litigation practices." Id. at 783-84 (quoting Law v. Siegel, 571 U.S. 415, 420 (2014)) (internal quotations omitted). The Ross court noted the Supreme Court's admonition in Law v. Siegel not to employ § 105 of the Bankruptcy Code to contravene a specific, explicit or express term of the Bankruptcy Code. Id. at 784. So the Ross court reviewed the Bankruptcy Code's overall statutory scheme – and specific provisions including § 1307(b) of the Bankruptcy Code – and confirmed that a bar order does not conflict with any explicit or express provisions of the Bankruptcy Code. Id. at 784-785. Therefore, the Ross court made clear that, even after Law v. Siegel, a bankruptcy court retained equitable authority to condition a debtor's voluntary dismissal. However, the authority is not without limits.

Any decision to exercise equitable authority must not be arbitrary, irrational or capricious. Id. at 786. The Ross court confirmed that a filing bar – even one with no temporal or geographic limitation – must be explained by the issuing Court. Id.

Many judges from this Court have found a bar order appropriate in dealing with abusive or serial filers. See, e.g., In re Norley, No. 10–10436, 2010 WL 9449238, at *4 (Bankr. E.D. Pa. Mar. 30, 2010) (Fitzsimon, J.) (barring the debtor "from filing a further bankruptcy case without prior leave of this Court" after finding the debtor to be a serial filer with several cases dismissed within six (6) months of filing, and repeatedly failing to file required documents, pay filing fees, and omitting information or including inconsistent information in schedules); In re Patton, No. 07–13996, 2009 WL 136817, at *4 (Bankr. E.D. Pa. Jan. 20, 2009) (Sigmund, J.) ("The dismissal will be with prejudice and provide that no further bankruptcy cases may be filed without leave of Court."); In re Petro, 18 B.R. 566, 568 (Bankr. E.D. Pa. 1982) (King, J.) (dismissing a chapter 13 case "with prejudice" and suggesting the debtors needed to petition the Court to vacate the prior order before filing any subsequent chapter 13 case). While indefinite bar orders are not without precedent, the Ross court highlighted that a bar order should be narrowly tailored and sparingly used. In re Ross, 858 F.3d at 787.

**Does This Court Have Authority To Issue Its Bar With Nationwide Application?**

The question remains, however, where does the bar order apply? Does the filing bar only apply here in the Eastern District of Pennsylvania, or does it preclude the Debtor from filing a bankruptcy case in any jurisdiction? The Bankruptcy Code, itself, is a national statute, imposing identical eligibility criteria on debtors in all jurisdictions throughout the country. See generally 2 Collier on Bankruptcy ¶ §109.01 (16th ed. 2026) (explaining that § 109 of the Bankruptcy Code outlines eligibility requirements, which does not concern itself with regional differences). Understanding that, the logical extension is that a bar to eligibility either imposed by statute (i.e., 11 U.S.C. § 109(g)(2)) or issued by a court should also have a national/uniform application. Id. While explicit language in an order barring future filings is uncommon, it seems likely that all

generic filing bars apply in districts other than the one where the order was entered. Cf. In re Somerset Cap. Corp., 264 B.R. 788, 790 (Bankr. D. Mass. 2001) (suggesting that any dismissal triggering to § 109(g) of the Bankruptcy Code "bars the Debtor from filing bankruptcy anywhere in the United States for a period of 180 days."). Nevertheless, courts around the country have explicitly barred subsequent filings anywhere in the nation, particularly in cases of long running abuse of the bankruptcy system or when a debtor shows a propensity to make vexatious or bad faith filings in multiple jurisdictions. See, e.g., In re Cannie, No. 3:24-BK-3364, 2026 WL 1473881, at *1 (M.D. Fla. May 27, 2026) (affirming the bankruptcy court's decision to impose a national two-year filing bar, in part because the debtor had "a history of initiating bankruptcy actions in multiple jurisdictions to relitigate the same issues with no legitimate purpose[.]"); Dekom v. Nationstar Mortg. LLC, No. 3:20-cv-5399, 2021 WL 1061177, at *2 (N.D. Fla. Mar. 20, 2021) (affirming a one-year national filing bar of a debtor who had not filed or sought confirmation of a chapter 13 plan in good faith, "lack[ed] bona fides in dealing with his primary creditor," and whose primary purpose in bankruptcy was to "continue his long-standing battle with [the secured lender]"); In re Brown, 319 B.R. 691, 694 (Bankr. M.D. Ala. 2005) (imposing a two-year filing bar anywhere in the United States based primarily on serial bankruptcy filings and using the "bankruptcy process to thwart their obligations to make payments on their mortgage"); In re Jones, 289 B.R. 436, 442 (Bankr. M.D. Ala. 2003) ("For the reasons set forth above, the Chapter 13 case is dismissed with prejudice pursuant to Section 349(a) and the Debtor is enjoined from filing a bankruptcy petition anywhere in the United States for a period of five years."); In re McCoy, 237 B.R. 419, 423 (Bankr. S.D. Ohio 1999) (enjoining a debtor from "filing a bankruptcy petition, individually and/or jointly, anywhere in the United States, at any time in the future" due to the debtor's eight (8) serial filings, finding they were "indicative of his

attempt to proceed without good faith and his continuous effort to abuse the bankruptcy process."); In re Freeman, 224 B.R. 376, 380 (Bankr. S.D. Ohio 1998) ("In order to prevent future harm to the Freemans' creditors and to preserve the integrity of the bankruptcy process, it is ORDERED that the instant case be DISMISSED WITH PREJUDICE and Bobby Dexter Freeman and Brenda Joyce Freeman are ENJOINED from filing a bankruptcy petition, individually and/or jointly, anywhere in the United States, at any time in the future."); and In re Millers, 90 B.R. 567, 568 (Bankr. S.D. Fla. 1988) ("That upon the request of the Trustee, this case is hereby dismissed with prejudice to the Debtor ever refiling a bankruptcy proceeding in this or any other bankruptcy court within the United States of America.")

A bar order with national effect could seem to implicate the Supreme Court's limitation against nation-wide injunctions in Trump v. CASA, Inc. 606 U.S. 831 (2025). But Trump v. CASA was focused on the problem of enjoining acts of the federal executive branch against parties which were not before the Court. Id. at 843. Here, a bar order affecting only the Debtor – a party clearly before it – does not implicate concerns of national injunctions. In Steele v. Bulova Watch Co., the Supreme Court made clear that courts retain appropriate jurisdiction to issue an injunction over a party plainly before it with effect throughout the United States. 344 U.S. 280, 289 (1952) (When "exercising its equity powers," a district court "may command persons properly before it to cease or perform acts outside its territorial jurisdiction"). The only individual affected by a bar order is the Debtor, and that Debtor is plainly before the Court. So long as this Court provides the explanation for why a bar order with national effect is justified on the facts before it, this Court concludes that binding precedent authorizes this Court to issue a bar order and for that order to affect the Debtor's eligibility to commence a bankruptcy case throughout the United States.

**While The Court Has Authority To Issue The Relief Requested, Should The Court?**

Guided by Ross, the Court undertakes a historical review of the Debtor's bankruptcy cases in this jurisdiction to determine whether the Court should exercise its equity authority to issue a bar order, and if so, for how long and with what effect.

**History Of The Debtor's Bankruptcy Cases In This District**

This is the seventh (7th) case filed by this Debtor in this district in the past 16 years. Each of the seven (7) cases were initially commenced as chapter 13 cases. [See generally 10-13614, 11-11408, 12-20451, 18-17342, 22-12013, 22-12668, and 26-10372.] Seven (7) cases in a 16-year period is not, in and of itself, necessarily problematic; the Court has experience with debtors with a much more substantial filing history than roughly one (1) case every 27 months. But the record, as a whole, makes clear that none of the Debtor's chapter 13 cases here have participated in the chapter 13 bargain.

Of the Debtor's seven (7) cases, two (2) of those cases were ultimately converted to chapter 7 cases [see generally 12-20451 and 22-12668] and were fully administered by a Chapter 7 Trustee. [Ex. AA & XX] The Debtor received a standard chapter 7 discharge in each. [Ex. Z & YY] Therefore, while the cases commenced as chapter 13 cases, the Court does not place a substantial reliance on how those cases administered.

Of the remaining chapter 13 cases, the below table represents certain operative information regarding each case[5]:

---

[5] In the "eligibility" analyses that follow, the Court generally does not address case 22-12013 as that case was dismissed within the first 30 days for failure to file documents.

Table 1

| Case No. | § 341 Meeting Held | Reason For Dismissal | Total Claims Filed | Secured Claims | Unsecured Claims |
|---|---|---|---|---|---|
| 10-13614 | No | Failure to File Documents | 22 | $971,430.28 | $582,059.34 |
| 11-11408 | Yes | Failure to Make Plan Payments | 24 | $997,857.92 | $453,265.43 |
| 18-17342 | No | Ineligible as corporate entity | 16 | $2,667,891.42 | $1,090,073.15 |
| 22-12013 | No (case pending for only 28 days) | Failure To File Documents | | | |
| 26-10372 | No | Voluntary Dismissal | 17 | $3,244,284.73 | $786,246.96 |

**General Chapter 13 Eligibility**

Congress has prescribed that only certain debtors are eligible to prosecute a chapter 13 case. Section 109(e) of the Bankruptcy Code provides: "Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated debts of less than $526,700 and noncontingent, liquidated, secured debts of less than $1,580,125[.]" So Congress has created two (2) limitations on the types of debtors who may seek chapter 13 relief: (i) the debtor must be an individual with regular income, and (ii) the debtor's debts cannot exceed certain statutory amounts. Here, the Debtor has failed eligibility in each of her filed chapter 13 cases.

**The Debtor Has Not Proven Herself To Be An Individual With Regular Income**

First, to be eligible for chapter 13 protection, the Debtor must be an individual with regular income. Again, the Bankruptcy Code provides a simple definition: "[t]he term 'individual with regular income' means [an] individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13[.]" 11 U.S.C.

§ 101(30). Although courts note this definition is not solely limited to "wages", courts have nonetheless required that the income must be sufficiently "regular" and must sufficiently exceed expenses to enable the debtor to make the payments required in a chapter 13 plan payment schedule. See generally 2 Collier on Bankruptcy ¶ 101.30 (16th ed. 2026); see generally 2 Collier on Bankruptcy ¶ 109.06 (16th ed. 2026) (explaining that the standard is whether the income is sufficient to meet plan payments, not the source of the income itself). The record before the Court establishes that the Debtor has reported income in her cases stemming from various types of employment and at varying rates as follows:

Table 2

| **Case No.** | **Debtor's Reported Source of "Regular Income"** | **Amount of "Regular Income" Reported** |
|---|---|---|
| 10-13614 | Medical Doctor | $10,000[6] |
| 11-11408 | Self-Employed | $8,357[7] |
| 18-17342 | Self-Employed | $2,390[8] |
| 26-10372 | Minister | $4,200[9] |

The varying employment history and varied income raise potential concern. The differing employment sources and the fact that it has been historically declining may suggest the Debtor did not have sufficiently "stable income" that could potentially fund a chapter 13 plan in any of her cases. Except with respect to Case No. 26-10372, the Debtor's respective Schedule J (which would identify disposable income (i.e., income in excess of expenses)) was not introduced into evidence at the Hearing. Therefore, the Court can only presume that the Debtor was an

---

[6] [Ex. C]

[7] [Ex. M]

[8] [Ex. FF]

[9] [Ex. LLL]

"individual with regular income" in each of the prior cases because sufficient evidence was not presented for the Court to make that conclusion. However, for purposes of the present case, the Debtor's Schedule J was admitted into evidence. That Schedule J (which is a party admission and not hearsay) see Fed. R. Evid. 801(d)(2), confirms that the Debtor's net income was ($844.85). [Ex. NNN] Therefore, in the current case, the Debtor's own Schedule J confirms that her income is less than her expenses. [Id.] Moreover, the Debtor provided no explanation that her income will increase or that her expenses will decrease to allow for the funding of a chapter 13 plan. [Id.] Therefore, the Court cannot conclude that the Debtor's income in the current case was sufficiently "regular" or "stable" to enable the Debtor to make the payments required under any proposed chapter 13 plan. Therefore, the Debtor was likely not an "individual with regular income" in the present case before the Court.

**The Debts In Each Of The Debtor's Cases Exceeded The Statutory Limits**

Second, eligibility is confined to those debtors with debts below certain statutory thresholds. While the Court recognizes there are conflicting cases about whether debt eligibility is tested on the face amount of the claims scheduled, the face amount of the claims as filed or the ultimate amount of claims allowed after objections, here the Debtor's various cases have not shown a realistic likelihood that the debts to be addressed through the chapter 13 process fall below the statutory limits in any event. The following table summarizes the total claims filed on the claims registry in each of her cases.

Table 3

| Case No. | Secured Claims | Unsecured Claims | Greater Than § 109(e) Limit (then in effect)[10] |
|---|---|---|---|
| 10-13614 | $971,430.28 | $582,059.34 | YES |
| 11-11408 | $997,857.92 | $453,265.43 | YES |
| 18-17342 | $2,667,891.42 | $1,090,073.15 | YES |
| 26-10372 | $3,244,284.73 | $786,246.96 | YES |

When a debtor elects to proceed in a chapter 13 case, eligibility is presumed. See 6 Collier Bankruptcy Practice Guide ¶ 101.03B (2026) ("in the absence of an objection to confirmation the court is unlikely to become aware of the debtor's ineligibility."); see also TICO Constr. Co. v. Van Meter (In re Powell), 119 F.4th 597, 605 (9th Cir. 2024). Parties in interest and the Court rely on a debtor's election and only take up an eligibility determination when facts raise the issue. See generally *Chapter 13 Practice and Procedure*, § 12:8, n. 9 & 10 (collecting cases). However, the record as a whole before this Court establishes that the claims asserted in each case confirmed the Debtor was ineligible in each and every case she submitted. As a result, the Debtor should not be entitled to benefit from any presumption that a future chapter 13 filing

[10] The following table reflects the Debt Limits under § 109(e) of the Bankruptcy Code then in effect for each date was

Table 4

| Dates | Secured Debt Limit | Unsecured Debt Limit |
|---|---|---|
| From April 1, 2010 to March 31, 2013 | $1,081,400 | $360,475 |
| From April 1, 2016 to March 31, 2019 | $1,184,200 | $394,725 |
| From April 1, 2025 | $1,580,125 | $526,700 |

W Homer Drake, Jr., Paul W. Bonapfel & Adam M. Goodman, *Chapter 13 Practice and Procedure*, § 12:8, n. 2 (2nd ed. 2025) (citations to Federal Register omitted).

will be proper. This Debtor should have to establish eligibility at the outset of a case before she seeks bankruptcy relief again.

**Despite Technical Ineligibility, Has The Debtor Nonetheless Shown A Sincere Intent To Prosecute A Successful Case?**

Over the past 16 years, the Debtor enjoyed the benefit of the automatic stay for one-third (1/3) of that time (albeit not consecutively). Each case filed by the Debtor over the 16-year span imposed the most significant aspect of bankruptcy protection on her creditors – a prohibition on execution against any of her assets. The Debtor received the "breathing spell" benefit of the chapter 13 bargain; however, the Debtor has not actively engaged in the chapter 13 process. In all but one case, a statutory meeting of creditors was not even convened. (<u>See</u> <u>supra</u> Table 1) Further, despite filing an initial chapter 13 plan in each of her cases, the Debtor failed to secure confirmation of any proposed plan or to meaningfully perform any plan pending confirmation.[11] The below table outlines the Debtor's proposed plan payments in each of her cases as well as the total payments made by the Debtor to the Chapter 13 Trustee in each case as reflected in the record:

[11] 11 U.S.C. § 1326(a)(1) (requiring payments by a chapter 13 debtor consistent with the proposed plan pre-confirmation).

Table 5

| **Case No.** | **Total Plan Payment Proposed** | **Total Amounts Actually Paid** | **Amount Returned to the Debtor Upon Dismissal/Conversion**[12] |
|---|---|---|---|
| 10-13614 | $62,070.60[13] | $5,173.43[14] | $3,156.10[15] |
| 11-11408 | $34,400[16] | $7,454.10[17] | $6,857.77[18] |
| 12-20451 | $35,212.80[19] | $4,695.04[20] | $4,319.44[21] |
| 18-17342 | $520,000[22] | $1,050[23] | $970.20[24] |
| 26-10372 | $90,000[25] | $195[26] | |

[12] 11 U.S.C. § 1326(a)(2) (confirming that, upon dismissal all amounts paid to the Chapter 13 Trustee not previously distributed per a confirmed plan are returned to the Debtor).

[13] [Ex. B]

[14] [Ex. D]

[15] [Ex. D]

[16] [Ex. N]

[17] [Ex. P]

[18] [Ex. P]

[19] [Ex. S]

[20] [Ex. AA]

[21] [Ex. AA] Funds were returned to the Debtor upon conversion as required by Harris v. Viegelahn, 575 U.S. 510 (2015).

[22] [Ex. EE] The Debtor proposed very minimal initial monthly payments with a "balloon" payment of $386,925.44 in month 60. [Id.]

[23] [Ex. LL]

[24] [Ex. LL]

[25] [Ex. OOO]

[26] [Ex. XXX]

The above table confirms that, in the Debtor's operative cases, she made payments of only $18,567.57 over her 16-year filing history (the overwhelming bulk of which was paid between 2010 and 2013). Of those minor payments, the Debtor received back over 82% of the amounts she paid to the Chapter 13 Trustee as a result of the dismissal/conversion of her cases. No payments were made to creditors. [See e.g., Ex. D, P, AA and LL] The record establishes that, since creditors did not receive any payment on their claims nor compensation for the imposition of the automatic stay through these seven (7) cases, the Debtors' creditors did not receive any benefit of the chapter 13 bargain.

The Chapter 13 Trustee, for himself, was forced to undertake his statutory duties as to this Debtor on seven (7) separate occasions. 11 U.S.C. § 1302. The record makes clear that the Debtor never confirmed a single plan in any of her seven (7) cases. The record further confirms that the Chapter 13 Trustee was merely acting as a "deposit account" for the minimal payments the Debtor made over her 16-year span. The Chapter 13 Trustee was then required to account and refund those amounts to the Debtor upon dismissal. (See supra Table 5). The Chapter 13 Trustee filed no less than ten (10) motions to dismiss in the Debtor's seven (7) cases – each requiring a substantial allocation of resources to a single debtor. As the record establishes, the Debtor has hijacked the Chapter 13 Trustee's office requiring substantial oversight and active motion practice without any meaningful participation by the Debtor in appearing at § 341 meetings or providing appropriate documents for the Chapter 13 Trustee or creditors to assess the Debtor's cases. Further, the Debtor's most recent cases have not even had substantial payments for the Chapter 13 Trustee to administer. (See supra Table 5) Rather, each of the Debtor's cases required a substantial outlay of resources to oversee cases which have shown themselves to be improper from the outset.

Finally, each dismissal has effectively mooted orders the Court entered in each case. Each motion filed by the parties in each of her cases required the Court to set – and conduct – a hearing. In many instances, requests have come on expedited bases, involved a multitude of filings, and required specially set hearings involving multiple hours of trial time. Further, each matter required a lengthy analysis of legal issues and a commitment of judicial resources to render a disposition. In the present case alone, the Court disposed of at least five (5) issues involving lengthy trials and dispositions. [See Dkt. Nos. 41, 54, 119, 120, 121, 204. 205. 206. 207, and 213] In light of the Debtor's dismissal, the Court questions whether those dispositions are now irrelevant to the adjustment of the debtor/creditor relationship of this Debtor to her creditors. The Court should be, and is, a forum for the prompt and meaningful adjudication of disputes. However, the repeated presentation of issues which are adjudicated by this Court – only to have them returned to *status quo ante* prepetition by repeated dismissals – wastes judicial resources which could be spent on other cases which would benefit from the Court's attention.

**Do "Other" Reasons Exist For Imposition Of A Bar?**

The Chapter 13 Trustee suggests two (2) additional bases for the appropriateness of a bar. First, the Chapter 13 Trustee argues that the Debtor is already the subject of filing bars in other courts, and that the Debtor is simply "forum shopping" in order to present her issues. While the existence of the filing bars in those other courts were presented at the hearing [Ex. TTT, UUU, VVV, and WWW] and the Court can take judicial notice of their existence and entry, the Court cannot (and does not) take judicial notice of the bases set forth in those orders (or the truth of them) in order to apply it here. Furnari v. Warden, 218 F.3d 250, 255 (3d Cir. 2000). No evidence was presented on the appropriateness of the rationales for the bars employed by those courts.

The mere existence of a filing bar in another court is not necessarily controlling here. This Court must and does make an independent assessment of the evidence before it to justify its decision.

The second reason proffered by the Chapter 13 Trustee for the filing bar is that the Debtor's multiple filings have prevented creditors (in particular U.S. Bank and Wells) from exercising their applicable non-bankruptcy law rights. That rationale alone is also unsatisfactory. Secured creditors, like U.S. Bank and Wells, have ample access to a simple process to obtain relief from the automatic stay imposed by any bankruptcy filing to pursue their collateral as a matter of right. In fact, in almost every case with this Debtor, those parties have exercised that right and made a motion for relief to exercise remedies as to their collateral (i.e., 5200 Montgomery Ave., and 2285 Bryn Mawr Ave. (respectively)) [See, e.g., Ex. A (i.e., Dkt. No. 24 & 29), Ex. G (i.e., Dkt. Nos. 29 and 38), Ex. DD (i.e., Dkt. No. 56), Ex. SS (i.e., Dkt. Nos. 60, 120 & 30), Ex. TT] In this case in particular, Wells obtained relief from the automatic stay [Dkt. No. 119] and already conducted a sheriff sale of its collateral. [Dkt. No. 139] While U.S. Bank did not seek relief in this case despite holding a Judgment in foreclosure against its collateral, the automatic stay terminated upon dismissal. 11 U.S.C. § 362(c)(3)(B). The Debtor is statutorily ineligible to be a debtor in another case for 180 days from the entry of the Dismissal Order. 11 U.S.C. § 109(g); [Dkt. No. 224, n.1] U.S. Bank argues that a bar of greater than 180 days is needed for it to proceed to execution of its judgment. [27] The Court is not persuaded that a bar is

[27] U.S. Bank argues that the present 180 day bar may not be sufficient for it to take its judgment to execution. But the facts and the law do not support that suggestion. U.S. Bank has at least three (3) available dates to schedule a sheriff sale of its collateral in Philadelphia County well before January 2027 (i.e., November 3, 2026 (submissions due by August 20, 2026), December 1, 2026 (submissions due by September 17, 2026), and January 5, 2027 (submissions due by October 16, 2026).) Fed. R. Evid. 201(b)(1) (permitting judicial notice of facts generally known in the territorial jurisdiction). Further, there was no evidence that U.S. Bank could not seek to schedule a sale outside the Philadelphia County Sheriff's standard advertising and still comply with the notice and publication requirements of applicable execution law. See Pa. R.

appropriate simply to protect secured creditors when they have not taken steps or otherwise established the rights that they can appropriately seek.

Although these two alternatives do not persuade the Court that a bar is appropriate in their own right, the record of the Debtor's ineligibility in each of her cases and her failure to successfully prosecute any of her chapter 13 cases to conclusion does. The record highlighted herein more than appropriately justifies the Court's decision here.

**The Propriety Of The Bar To Be Issued**

Having concluded that a filing bar is appropriate based on the record as a whole, the final three (3) questions for the Court are (i) for how long; (ii) affecting which types of cases; and (iii) where should the bar have application. The Court takes these in reverse order.

The Court in In re Ross requires that any filing bar must not be arbitrary, irrational or capricious and must be narrowly tailored. Id. at 786 -787. Here, and despite the "name" of a national bar, the Court's bar **is** narrowly tailored based on the record in this case.

**The Filing Bar For This Debtor Should Have National Application**

Any filing bar is an assessment of a debtor's eligibility to be a debtor under the Bankruptcy Code. The Debtor's history of bankruptcy filings in this district should not be viewed in isolation. The fact that the Debtor's cases have been historically statutorily ineligible in this district would not change if the Debtor were able to create venue in another district. See 2 Collier on Bankruptcy ¶ §109.01 (16th ed. 2026). The same can be said in the future. Therefore, the Court deems this Debtor's bankruptcy eligibility to be a matter of uniform application throughout the United States. See Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 43

---

Civ. P. 3129.2(b) and (c) (requiring service of notice of an execution sale of real property at least 30 days prior to said sale) and Pa. R. Civ. P. 3129.2(d) (requiring advertising of said sale at least 21 days before said sale).

(1989) ("[F]ederal statutes are generally intended to have uniform nationwide application.") As courts in this district and others have done, see supra, the Court will impose a bar to the Debtor's right to file another bankruptcy case in any jurisdiction without further leave of this Court. A nationwide bar preserves the integrity of the bankruptcy system as a whole by not fostering venue manipulation and forum shopping. Therefore, consistent with the implicit and explicit rulings of other courts supra, and based on the record as a whole, this Court concludes that a bar with national effect is (i) appropriate, (ii) justified under the circumstances, (iii) consistent with statutory provisions, and (iv) authorized by binding precedent.

**The Filing Bar For This Debtor Should Preclude All Future Filings**

While the record before the Court made clear that the Debtor has historically presented chapter 13 cases when she was statutorily ineligible, should the Court's bar here apply to cases under any chapter? The Court has not found prior cases which specify the types of future cases which are precluded. Certainly using a caveat limited to chapter 13 cases is narrowly tailored. While there is a certain utility in limiting the bar to only chapter 13 relief because that is the history that brings us to today, a bar to all filings is also narrowly tailored.

The record before this Court already makes clear the Debtor is ineligible to be a debtor in another case – under any chapter – prior to January 2027. 11 U.S.C. § 109(g); [Dkt. No. 224, n.1.] Further, having received a chapter 7 discharge in 2022, the Debtor is to receive another discharge in a chapter 7 or chapter 11 case before 2030. See 11 U.S.C. § 727(a)(8) and 1141(d)(3)(C); [Ex. YY] Therefore, while it is likely the Debtor will not file another chapter 7 or chapter 11 case before 2030, there is not an absolute prohibition and the Debtor could still file such a case without a filing bar in effect.

The impacts of the Debtor's filing history is not necessarily limited to chapter 13 cases; any filing under any chapter would still implicate a potential automatic stay affecting creditors and require the Court (and other court personnel) to expend judicial resources when the Debtor's history has not shown itself to require either of those benefits. This should be offset by the general openness of the bankruptcy system to those honest and unfortunate debtors who need access to the court system. Because it is impossible to isolate items of bankruptcy relief at the outset of a case which are not already prescribed by statute, the Court is left with policing this Debtor's filings in an alternative way.

Here, a general bar to the Debtor's bankruptcy filing has a safety valve to allow the Debtor to seek bankruptcy relief. The Debtor has the right to seek leave of this Court to permit a filing. If/when the Debtor intends to present a viable case under the Bankruptcy Code, the Debtor has the opportunity to do that. The Court can grant leave upon an appropriate showing that the future case is proceeding in good faith when the Debtor is statutorily eligible. The Court is confident that it can evaluate the Debtor's eligibility to proceed under any chapter of the Bankruptcy Code through the adversarial process in very short order. Because the bar has an opportunity for the Debtor to seek leave to modify the bar to present a future filing, the Court concludes that a general filing bar will not unnecessarily burden this Debtor's access to the court system. Therefore, consistent with the implicit and explicit rulings of other courts supra, and based on the record as a whole, this Court concludes that a bar precluding filing of any case is (i) appropriate, (ii) justified under the circumstances, (iii) consistent with statutory provisions, and (iv) authorized by binding precedent.

**The Filing Bar For This Debtor Should Preclude All Future Filings Before December 31, 2035**

As to the length of the bar, one could argue that it is unfair to utilize a 16 year history – with only seven (7) cases during that time – to justify a bar, but that only looks at the surface. This Debtor strategically used that 16-year history in spurts to maximize the chapter 13 effects. First, the Debtor filed three (3) cases in a 46-month period maximizing the automatic stay for 32 months before securing a chapter 7 discharge. [See, e.g., Exs. A, G, R, & Z] When those effects lapsed, the Debtor filled another chapter 13 case – as an ineligible corporate entity – lasting another nine (9) months, reimposing the stay, and using the bankruptcy court as a litigation vehicle all while ignoring the chapter 13 bargain. [See, e.g., Exs. DD, KK, & LL] Four (4) years later, the Debtor filed two (2) more successive cases lasting another eight (8) months, again securing a chapter 7 discharge. [See, e.g., Exs. OO, SS, & YY] Four (4) years after that – after reopening prior cases and unsuccessfully litigating discharge issues [see, e.g., Ex. SS, Dkt Nos. 147, 185, 186, 207, 208, 209] – the Debtor brought this present case. [See, e.g., Ex. KKK] This case spanned six (6) months and was spent entirely in litigation with little to no activity toward the payment of credit or claims. As each of the cases progressed, the Debtor showed herself to be less and less willing to participate in the chapter 13 bargain as she made fewer and fewer payments toward any chapter 13 plan payment schedule (see supra Table 5) calling the Debtor's bankruptcy motives into question.

Admittedly, a bar is often sought when a debtor has been seeking relief in multiple cases in a short period of time and to prevent a debtor from commencing another case or series of cases quickly to continue the debtor's pattern. But here, the record is more pronounced and more elongated because this Debtor was able to engineer the process so it had its maximum effect –

the automatic stay – after elongating and exhausting other avenues. Based on the record as a whole, this Debtor has demonstrated a propensity to seek relief in the longest possible stretches to maximize the benefit of bankruptcy protection without any of its burdens.

The Chapter 13 Trustee and others seek the imposition of a lifetime bar as the most effective means to preclude further manipulation. However, a lifetime bar – by name alone – seems to be the antithesis of "narrowly tailored". A lifetime bar is not the only reasonable way to ensure this Debtor will not simply "wait out" the next possible opportunity and begin another series of filings. The Court has already noted the statutory bar which exists through January 2027 and the "practical reality" that the Debtor will not seek additional bankruptcy protection prior to 2030 (because of her 2022 discharge). One could argue that those limitations are themselves sufficient, but this Debtor's filing history has shown an ability to reemploy the bankruptcy process even after chapter 7 discharges. An additional five (5) year bar – through December 31, 2035 – provides an ample extension of the statutory limitations to work against a manipulation of the bankruptcy process by this Debtor to the detriment of creditors. Taken as a whole a filing bar through 2035 represents an eight (8) year total bar. The eight (8) year bar is ½ of the Debtor's overall filing history in this Court and is also roughly consistent with the inability for the Debtor to secure a new discharge if the Debtor had completed her chapter 13 case here. 11 U.S.C. § 1328(f)(2) (i.e., if the Debtor confirmed and successfully completed her chapter 13 plan in this case, the Debtor would be statutorily ineligible for another discharge for an additional 2 years). This eight (8) year total filing bar bears a rational relation to those two periods that is appropriate under the circumstances. Again, this bar reflects a presumption by this Court that a future filing by this particular Debtor prior to December 31, 2035 is far more likely to be an improper or abusive filing than a legitimate one. However, as in each case this

Court has reviewed, supra, the Debtor is not completely cut off from accessing the bankruptcy system. If the Debtor is in sincere need of bankruptcy protection before December 31, 2035 and able to present evidence that a future case would be proper and brought in good faith, the Debtor has the opportunity to come to this Court and present the bases therefor. Therefore, consistent with the implicit and explicit rulings of other courts supra, and based on the record as a whole, this Court concludes that a bar to future bankruptcy filings through December 31, 2035 is (i) appropriate, (ii) justified under the circumstances, (iii) consistent with statutory provisions, and (iv) authorized by binding precedent.

**Wells's Request For Sanctions Is Denied For Lack of Jurisdiction.**

Having determined the issue for which jurisdiction was specifically retained (i.e., the imposition of conditions on the Debtor's dismissal of her case) the Court takes up Wells's request for sanctions. [Dkt. No. 232] Wells's request was originally filed in conjunction with its motion to dismiss submitted in one of the adversary proceedings originally connected to the Debtor's main bankruptcy case. [26-133 Adv. Dkt. No. 71] Wells argues that the Court's retention of jurisdiction in the Dismissal Order extends the Court's jurisdiction to consider the pending request in the adversary case. It does not.

The Debtor voluntarily dismissed the adversary proceeding as to Wells in June 2026 [26-133 Adv. Dkt. No. 52] and as to all defendants in July 2026. [26-133 Adv. Dkt. No. 62] During a status conference prior to the Debtor's adversary proceeding dismissals, the presiding judge in that adversary proceeding indicated a willingness to consider a prejudicial dismissal of the adversary proceeding and request for sanctions proposed by Wells. The Court had jurisdiction over that proceeding (and a request for sanctions in connection therewith) under 28 U.S.C. § 1334(b) because it remained related to a then existing main bankruptcy case. The Dismissal

Order dismissed the main bankruptcy case and further dismissed all adversary proceedings associated with the main bankruptcy case for lack of jurisdiction. [Dkt. No. 224 at n.2] There was no retention of jurisdiction associated with any adversary proceedings. While Wells may have requested that the Court consider sanctions in the adversary proceedings prior to entry of the Dismissal Order, Wells did not submit the information upon which the Court could consider such sanctions until *after* the Dismissal Order was entered. [See 26-133 Adv. Dkt. 71] (submitted 24 minutes after the Dismissal Order was entered.) .

When originally commenced, the Court had jurisdiction over the adversary proceeding as related to the main case. See 28 U.S.C. 1334(b) Even when the adversary proceeding was dismissed, the Court still retained jurisdiction over post dismissal proceedings in the adversary proceeding because it was related to the main bankruptcy case. Id. However, once the main case was dismissed, the jurisdictional tether of the dismissed adversary proceedings released unless there was a proper retention of jurisdiction which complied with existing precedent. See Smith v. Comm. Banking Corp. (In re Smith), 866 F.2d 576, 580 (3d Cir. 1989) (noting that a dismissal of a main case or an adversary proceeding could retain jurisdiction under certain enumerated exceptions). Here, there was none.

The Dismissal Order dismissed all pending adversary proceedings without any retention of jurisdiction. [Dkt. No. 224, n. 2] The Court cannot find a case allowing a court to express a *post hoc* retention of jurisdiction after dismissal occurred. The Court will not do so here. Therefore, since the Court is without jurisdiction over the adversary proceeding or proceedings therein after dismissal, the Court declines to consider Wells's request on jurisdictional grounds.

## Conclusion

For the foregoing reasons, the Court will impose a bar to the Debtor's right to file another bankruptcy case in any jurisdiction individually in her own name, jointly with another debtor, or as a representative of another entity (i.e., an estate, a living trust) prior to December 31, 2035 without further leave of this Court.

In light of the dismissal of the main bankruptcy case, Wells's Request For Sanctions [Dkt. No. 232] is DENIED for lack of jurisdiction.

An appropriate order will issue.

**Date: October 19, 2026**

**DEREK J. BAKER**
**U.S. BANKRUPTCY JUDGE**